# United States Court of Appeals
## For the First Circuit

No. 01-2136

WILLIAM E. LARGE AND DIANE A. LARGE,

Plaintiffs, Appellants,

v.

CONSECO FINANCE SERVICING CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Daniel A. Edelman, with whom Cathleen M. Combs, Tara L. Goodwin, Edelman, Combs & Latturner, Christopher M. Lefebvre, and Family and Consumer Law Center were on brief, for appellants.

Edward D. Rogers, with whom Richard L. Gemma, MacAdams & Wieck, Alan S. Kaplinsky, and Ballard Spahr Andrews & Ingersoll, LLP, were on brief, for appellee.

June 6, 2002

**LIPEZ, Circuit Judge**.  This case requires us to decide whether a borrower's assertion of the right to rescind a loan transaction subject to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., has the effect of voiding the transaction without resort to the arbitration procedure called for by a provision in the loan agreement between the parties.  Concluding that the mere assertion of the right of rescission does not undo the obligation to take the rescission claim to arbitration, we affirm the district court's grant of defendant-lender's motion to compel arbitration. We also conclude that plaintiffs' motion to conduct discovery on the question of the costs of arbitration is moot.

## I. Background

The relevant facts are undisputed.  William E. Large and Diane A. Large purchased a home in Johnston, Rhode Island, in September of 1998.  On March 28, 2000, the Larges obtained a $20,000 mortgage loan from Conseco Finance Servicing Corp. at an annual percentage rate of 20.192%.  A year later, on March 20, 2001, the Larges wrote to Conseco to give notice of their rescission of the transaction based on Conseco's alleged failure to make accurate material disclosures concerning the rate of interest, as required under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq.[1]  The statute grants the borrower an unconditional right of

---

[1]  Because of the high interest rate, Conseco was required to make special disclosures regarding the interest rate pursuant to 15 U.S.C. § 1639 and 12 C.F.R. § 226.32(c).  The Larges alleged that Conseco's disclosure understated the annual percentage rate for the loan, and included an additional item, "Nominal Interest Rate," which the statute does not require, and which "contradicts and

rescission for the first three days following the consummation of the transaction.  It also grants a right of rescission if the creditor fails to deliver certain forms and to disclose certain information.  The statute provides, in pertinent part:

> in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).  Section 1635(f) establishes a three-year time limit on the exercise of the conditional right of rescission.  It is the conditional, three-year right of rescission that is at issue in this case.  As noted, the Larges acted well within that time frame.

In their March 20, 2001, letter the Larges indicated to Conseco that because of its alleged violation of TILA's disclosure rules, it had "twenty days after receipt of this notice of rescission to return all monies paid and to take any action necessary and appropriate to reflect termination of [Conseco's] security interest" in the Larges' home, pursuant to 15 U.S.C. § 1635(b).  Conseco replied nine days later, stating that it

undermines the conspicuousness of the required annual percentage rate disclosure."

-3-

"fail[ed] to see any issues with regard to the disclosures made," and therefore would "not comply with this disputed rescission request."

Before receiving Conseco's letter, the Larges filed a complaint in federal district court on March 26, 2001, seeking to enforce their alleged rescission of the transaction. An amended complaint was filed on April 26. Conseco filed an answer on May 11, 2001, and moved to compel arbitration of the Larges' claims pursuant to the following arbitration clause in the loan agreement:

> All disputes, claims, or controversies arising from or relating to this note or the relationships which result from this note, or the validity of this arbitration clause or the entire note, shall be resolved by binding arbitration by one arbitrator selected by [Conseco] with [the borrower's] consent.

The Larges opposed Conseco's motion to compel arbitration on the ground that the arbitration clause had been automatically rescinded, along with the remainder of the loan contract, when the Larges gave Conseco notice of rescission on March 20, 2001. The Larges also requested discovery on the question of the costs of arbitration. On June 18, 2001, Conseco wrote to the Larges offering "to pay all costs of arbitration" and to hold the arbitration in Rhode Island "as a convenience" to the Larges.

On July 26, 2001, the district court granted Conseco's motion to compel arbitration, denied the Larges' request for discovery, and dismissed the action. The district court rejected the Larges' "claim that their notice of rescission under the TILA invalidated all provisions of the mortgage contract, including the

-4-

arbitration clause." The court explained that "absent an attack on the specific arbitration clause included within a contract, general rescission claims are resolvable by arbitration." The court also rejected the Larges' request for discovery on the costs of arbitration, noting that Conseco had offered to pay their costs and to hold the arbitration in Rhode Island, and that the TILA authorized the award of costs and attorney's fees if the Larges prevailed. See 15 U.S.C. § 1640(a)(3). The Larges filed a timely appeal.

## II. The Motion to Compel Arbitration

The Federal Arbitration Act (FAA) "requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967) (quoting 9 U.S.C. § 3). The FAA establishes a "'liberal federal policy favoring arbitration agreements.'"[2] Green Tree Fin. Corp. v.

---

[2] The core provision of the FAA is found in 9 U.S.C. § 2, which provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Randolph, 531 U.S. 79, 91 (2000) (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). However, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) (quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986)). Although the Larges acknowledge having signed a loan agreement containing an arbitration clause, they take the position that rescission under the TILA is automatic, and that once they notified Conseco of their intention to rescind, the loan agreement ceased to exist, leaving them with no further obligation to Conseco. If the loan agreement ceased to exist, the Larges reason, so did the arbitration clause embedded in it.

The problem with this argument is that the right to rescind under the TILA does not extend beyond three days unless the lender fails to "deliver[] . . . the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter." 15 U.S.C. § 1635(a). Since the right to rescind after three days is conditioned on the lender failing to make certain disclosures required under the TILA, a borrower is not entitled to rescind after the initial three-day period has ended unless the required disclosures have in fact not been made. The question, then, is who should decide whether the statutory disclosure requirements have been met: the district court, or the

arbitrator provided for in the loan agreement which the Larges claim to have rescinded?

The Supreme Court addressed this issue in Prima Paint, concluding that an arbitration clause is severable from the contract in which it is embedded. 388 U.S. at 402-07. As we have explained, "'a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.'" Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co., 774 F.2d 524, 528 (1st Cir. 1985) (quoting Prima Paint, 388 U.S. at 402). The severability doctrine applies unless "the claim is fraud in the inducement of the arbitration clause itself," in which case the arbitration clause does not govern a challenge to its own validity. Prima Paint, 388 U.S. at 403. We have said that "[t]he basis of the underlying challenge to the contract does not alter the severability principle." Unionmutual, 774 F.2d at 529 ("[T]he fact that [the] attempt to rescind the entire agreement is based on the grounds of frustration of purpose rather than on fraud in the inducement does not change applicability of the severability doctrine."). In sum, "[t]he teaching of Prima Paint is that a federal court must not remove from the arbitrator[] consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." Id.

The Larges do not allege that Conseco engaged in illegal conduct with respect to the arbitration clause itself. Prima Paint, therefore, would seem to support the district court's

decision to grant Conseco's motion to compel arbitration. The Larges counter that the district court "overlooked the recent clarifications by the majority of circuits, which found that the [Prima Paint severability] doctrine does not apply to allegations of nonexistent contracts." However, the Larges cite cases involving allegations that the contract with the arbitration clause never existed. The "clarification" of Prima Paint in these cases does not bear on a dispute over a purported rescission of a contract that is acknowledged to have once existed, but is alleged to have been rescinded subsequently.

For example, in Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1137-42 (9th Cir. 1991), the Ninth Circuit refused to compel arbitration where the plaintiffs claimed that an agreement to arbitrate was void because the individual who signed the agreement lacked the authority to bind the plaintiffs. The court observed that the holding of Prima Paint was "limited to challenges seeking to avoid or rescind a contract," as the Larges are doing here, and was inapplicable to "challenges going to the very existence of a contract that a party claims never to have agreed to."[3] Id. at 1140. Likewise, in Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 100, 101 (3rd Cir. 2000), the Third Circuit refused to compel arbitration where the party opposed to arbitration asserted that "the agent who signed

_____

[3] The court observed that "[a] contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature." Three Valleys, 925 F.2d at 1140.

-8-

the agreement on its behalf lacked authority to do so." The court indicated that Prima Paint's "doctrine of severability [of the arbitration clause from the challenged agreement] presumes an underlying, existent[] agreement." Id. at 106. Although "[s]uch an agreement exists, under the Prima Paint doctrine, even if one of the parties seeks to rescind it on the basis of fraud in the inducement," no such agreement can be said to exist if the parties never entered into a contract in the first place. Id. Our decision in McCarthy -- holding that an arbitration clause in a contract signed by a corporate officer in his official capacity could not be enforced in an action against the officer in his individual capacity -- also turned on the fact that no contract had ever existed between the plaintiff and the corporate officer in his individual capacity.[4] 22 F.3d at 353, 357; see also Sphere Drake Ins. Ltd., v. All Am. Ins. Co., 256 F.3d 587 (7th Cir. 2001); Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 855 (11th Cir. 1992) ("Prima Paint has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract never existed at all." (emphasis in original)); I.S. Joseph Co., Inc. v. Mich. Sugar Co.,

---

[4] The Larges cite Matterhorn, Inc. v. NCR Corp., 763 F.2d 866 (7th Cir. 1985), for the proposition that "[t]he fact that a contract may have arguably once existed does not matter." Matterhorn is easily distinguishable. The plaintiff there did not challenge the validity of the contract containing the arbitration clause, but instead argued that a subsequent transaction had created a new contract that did not include an arbitration clause. Id. at 871-72. The court upheld the jury's finding that the new contract (which governed the dispute) did not include an arbitration clause. Id. at 874-75.

-9-

803 F.2d 396, 400 (8th Cir. 1986) (directing district court rather than arbitrator to decide whether purported assignee could enforce an arbitration clause in a contract to which it was not an original party).

Here, it is undisputed that the loan agreement existed between March 28, 2000, and March 20, 2001. The Larges contend, however, that their letter of March 20, 2001, had the automatic and immediate effect of voiding the entire transaction. In their view, the letter did not simply demand rescission of the transaction, but in fact rescinded the transaction the moment it was mailed. They argue that the loan agreement (and with it the arbitration clause) ceased to exist with the dispatch of the March 20, 2001, letter, and therefore has no more force at this point than a contract that never existed in the first place.

In support of their theory of automatic rescission, the Larges point to 15 U.S.C. § 1635(b), which states that "[w]hen an obligor exercises his right to rescind under [§ 1635(a)], he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." In addition, the TILA provides that, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). Likewise, Federal Reserve Board

Regulation Z stipulates that "[w]hen a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge."  12 C.F.R. § 226.23 (d)(1).

The Larges misread these provisions.  Neither the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.  Section 1635(b) states that, "[w]hen an obligor exercises his right to rescind," the creditor's security interest "becomes void."  The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined.  If a lender disputes a borrower's purported right to rescind, the designated decision maker -- here an arbitrator -- must decide whether the conditions for rescission have been met. Until such decision is made, the Larges have only advanced a claim seeking rescission.  The agreement remains in force, and is subject to the general rule that "a federal court must not remove from the arbitrator[] consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself."  Unionmutual, 774 F.2d at 529.  If the TILA language on which the Larges rely created an exception to this well-established rule of law, a borrower could rescind a

transaction without any statutory justification simply by alleging that the statutory requirements for rescission had been met.  That is an untenable proposition.

The Larges cite several cases from other jurisdictions in an attempt to muster support for their claim that rescission under the TILA is automatic upon the giving of notice, even if the lender denies that the requirements for rescission have been met.  However, most of those cases are inapposite because the lender, unlike Conseco here, had <u>conceded</u> that there had been a violation of the TILA's disclosure rules.  <u>See</u> <u>In re Quenzer</u>, 266 B.R. 760, 762 (Bankr. D. Kan. 2001) (the lender "concedes the notice given violated the TILA"); <u>In re Whitley</u>, 177 B.R. 142, 144 (Bankr. D. Mass. 1995) (defendant's counsel "conceded that a violation of TILA . . . had occurred").  At issue in these cases was the power of the court to impose additional conditions, beyond those stipulated in the TILA, on the borrower's acknowledged right to rescind.  <u>See</u> <u>Quenzer</u>, 266 B.R. at 763 ("[the lender argues] that the Court has the power to . . . condition the voiding of the security interest on the debtors' repayment of the loan"); <u>Whitley</u>, 177 B.R. at 152 ("[t]his Court can conceive of circumstances where the statutory right to rescind might be conditioned upon an obligor's tender").  Thus, the language in these cases suggesting that rescission under the TILA is automatic does not apply where the lender disputes the borrower's claim that rescission is warranted under the TILA in the first place.

The Eleventh Circuit has explained the meaning of references to "automatic" rescission under the TILA. In <u>Williams</u> v. <u>Homestake Mortgage Co.</u>, 968 F.2d 1137, 1140 (11th Cir. 1992), one of those cases where the creditor agreed that grounds for rescission existed, the court noted that under the TILA, "all the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." In describing the TILA rescission right as "automatic," the <u>Williams</u> court was contrasting TILA rescission with common law rescission, where "the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void." <u>Id.</u> at 1140. Rescission under the TILA is "automatic" in the sense that, in contrast to common law rescission, the borrower need not first return the loan proceeds received under the agreement to effect a rescission.[5] The purpose of the TILA's reordering of common law rescission rules is to put the consumer in a stronger bargaining position. <u>Id.</u> Contrary to what the Larges suggest, however, the

_____

[5] The procedure for effecting a rescission under the TILA is as follows:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor . . . .

15 U.S.C. § 1635(b).

-13-

use of the word "automatic" in <u>Williams</u> presupposes that the grounds for rescission have been established, either by agreement or by an appropriate decision maker.

The one case the Larges cite that offers some support for their position is <u>Wilson</u> v. <u>Par Builders II, Inc.</u>, 879 F. Supp. 1187 (M.D. Fla. 1995).[6] In <u>Wilson</u>, the borrowers sent the lender notice of rescission pursuant to the TILA, and then filed an action in federal district court seeking to enforce their statutory rights. <u>Id.</u> at 1190. The district court denied the lender's motion to compel arbitration, finding that the question of "the effect, if any, of the [borrowers'] notice of rescission" was "an issue for the district court." <u>Id.</u>

We find more compelling the holding of <u>Dorsey</u> v. <u>H.C.P. Sales, Inc.</u>, 46 F. Supp. 2d 804, 806 (N.D. Ill. 1999), where the court, on essentially the same facts as in this case, rejected the argument the Larges advance here. The outcome in <u>Dorsey</u>, unlike that in <u>Wilson</u>, is consistent with <u>Prima Paint</u> and <u>Unionmutual</u>. We therefore conclude that the district court was correct to grant the motion to compel arbitration.

---

[6] <u>Franklin</u> v. <u>Hartland Mortgage Centers, Inc.</u>, No. 01 C 2041, 2001 WL 726986, at *2 (N.D. Ill. June 28, 2001), does not help the Larges, as the arbitration clause in that case specifically excluded disputes arising out of "the exercise of any self-help remedies," and the court found that the debtor's exercise of the TILA rescission right qualified as a self-help remedy. Nor do we find persuasive the two Florida state court cases (not dealing with TILA) which the Larges cite.

### III. Discovery on the Costs of Arbitration

In <u>Green Tree Fin. Corp.</u> v. <u>Randolph</u>, 531 U.S. 79 (2000) a TILA plaintiff argued that her "arbitration agreement's silence with respect to costs and fees creates a risk that she will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum, and thereby forces her to forgo any claims she may have." <u>Id.</u> at 90 (internal quotation marks omitted). The Court rejected this argument on the ground that "[t]he risk that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of the arbitration agreement." <u>Id.</u> at 91. The Court indicated that the outcome might have been different if the plaintiff had demonstrated during discovery a likelihood that she would in fact have incurred prohibitive costs:

> where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. [Plaintiff] did not meet that burden. How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point.

<u>Id.</u> at 92. Here, however, no such showing is possible because Conseco has agreed to cover the costs of arbitration. Conseco's offer to pay the costs of arbitration and to hold the arbitration in the Larges' home state of Rhode Island mooted the issue of

-15-

arbitration costs.  The district court did not err in refusing to permit the Larges to take discovery on the costs of arbitration.

We explained the controlling principle in Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59 (1st Cir. 2002).  A party who had agreed not to collect any award of attorney's fees nevertheless appealed the district court's denial of its claim for attorney's fees, on the ground that a "judgement for attorney's fees would be valuable to deter other potential plaintiffs from filing frivolous claims." Id. at 64.  We held that, "[a]lthough possibly being of some value in future situations, a judgment by the district court on the issue of attorney's fees would be superfluous because of the agreement [not to collect]."  Id. at 65.  We explained that "[c]ourts are not required to go through the symbolic step of entering a judgment which the beneficiary has already agreed not to collect" for no other reason than to establish a precedent for use in future cases. Id.  Likewise here, the district court was not required to permit discovery on an issue that no longer had any bearing on the outcome of the dispute before it.

The Larges cite Perez v. Globe Airport Security Services, Inc., 253 F.3d 1280 (11th Cir. 2001), for the proposition that an arbitration agreement is invalid on its face if it limits the judicial remedies available to the plaintiffs.  The arbitration agreement in Perez stipulated that all fees and costs would be borne equally by the parties.  Id. at 1282.  The Eleventh Circuit held that the agreement was illegal because it required the plaintiff to waive her statutory right under Title VII to recover

-16-

fees and costs if she prevailed.  Id. at 1285.  Perez is not on point, however, because the arbitration clause here does not deprive the Larges of any statutory rights in connection with the costs of arbitration.  The arbitration clause states: "The parties agree and understand that the arbitrator shall have all powers provided by law and the note.  These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief."  It does not limit the power of the arbitrator to award statutory relief to the Larges pursuant to 15 U.S.C. § 1640(a)(3) (authorizing award of costs and attorney's fees to prevailing parties).

**Affirmed**.