Clyde L. **BERTRAM** and Linda R. Bonner, Plaintiffs,

v.

**BENEFICIAL CONSUMER DISCOUNT COMPANY,** Defendant.

Civil Action No. 1:03–CV–0954.

United States District Court, M.D. Pennsylvania.

Oct. 14, 2003.

Stephen K. Portko, Bratic & Portko, Dillsburg, PA, for Plaintiff.

Joseph F. Riga, Linda Levitsky, Whittlesey McDowell & Riga, Maple Shade, NJ, for Defendant.

## *MEMORANDUM*

CONNER, District Judge.

Presently before the court is a motion for a stay pending arbitration (Doc. 3) filed by defendant, Beneficial Consumer Discount Company ("Beneficial"), based on an arbitration clause included in a consumer credit agreement between defendant and plaintiffs, Clyde L. Bertram and Linda R. Bonner. Plaintiffs, who seek damages for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667, claim that a notice of rescission sent to defendant pursuant to TILA voided the agreement, including the arbitration clause, and, thus, defendant cannot compel arbitration of this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

The question presented by the motion is whether a notice of rescission under TILA renders a consumer credit agreement void *ab initio*, precluding enforcement of an otherwise applicable arbitration provision. For the following reasons, the court finds that it does not and, accordingly, will grant

defendant's motion to stay this action pending arbitration.

## I. *Statement of Facts* [1]

In June 2001, in an effort to refinance an existing mortgage on their home, plaintiffs executed a mortgage agreement under which Beneficial acquired a security interest in the property in exchange for a loan of approximately $150,000. (Doc. 1 ¶¶ 7–9). Concurrently, plaintiffs executed an arbitration agreement, attached to the mortgage agreement as a rider, providing, in pertinent part, as follows:

> This Arbitration Rider is signed as part of your [mortgage] Agreement with [Beneficial] and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either [Beneficial] or you may request that any claim ... arising from or relating to this Agreement ... including the validity or enforceability of this arbitration clause ... or the entire Agreement ... shall be resolved, upon the election of you or [Beneficial], by binding arbitration pursuant to this arbitration provision....

(Doc. 4, Ex. A at 1). Subsequent language states that "[t]his Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act." (Doc. 4, Ex. A at 1).

In connection with this transaction, Beneficial delivered to plaintiffs a disclosure statement, which, according to plaintiffs, failed to provide notice of all information required by TILA and its implementing regulations, 12 C.F.R. §§ 226.1–.36 ("Regulation Z").[2] In March 2002, plaintiffs sent Beneficial a notice of rescission, purporting to rescind the mortgage agreement pursuant to TILA.

After defendant failed to recognize the termination of the security interest or to return any money to plaintiffs within twenty days, as required by TILA, plaintiffs filed the present action. In their complaint, plaintiffs allege that defendant's conduct violated TILA and was unconscionable and in bad faith, entitling them to monetary relief and a declaration that the mortgage agreement is void.

## II. *Standard of Review*

■■■ Granting a motion to compel arbitration, or to stay pending arbitration, effects a "summary disposition of the [factual] issue" of the existence of an agreement to arbitrate, and, for this reason, courts should consider the facts in the light most favorable to the non-movant, giving that party "the benefit of all reasonable doubts and inferences that may arise." *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 & n. 9 (3d Cir.1980), *quoted with approval in Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 106 (3d Cir.2000). In the context of such a motion, the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party. *See id.* (citing Fed.R.Civ.P. 56(c)).

## III. *Discussion*

■■ Resolution of the claims presented in the instant motion requires, as a threshold matter, clarification of the nature and scope of the issues involved. Plaintiffs' sole contention against enforcement of the

---

1. In accordance with the standard of review on a motion to stay pending arbitration, the court will present the facts in the light most favorable to plaintiffs, as the non-moving parties. *See infra* Part II.

2. For discussion purposes, the acronym TILA will be used to refer to both the statute and its implementing regulations. *See* 15 U.S.C. §§ 1601–1667; 12 C.F.R. §§ 226.1–.36.

arbitration clause is that the notice of rescission sent to defendant automatically voided the mortgage agreement, rendering the embedded arbitration clause ineffective.[3] Thus, the court must determine (1) under what circumstances the FAA requires enforcement of arbitration clauses and (2) whether an arbitration clause in a contract subject to rescission under TILA falls within one of those circumstances.

### A. *Federal Arbitration Act*

■ The FAA, which provides a framework for the implementation and enforcement of private arbitration agreements, establishes a strong presumption in favor of arbitration over litigation. *Sandvik,* 220 F.3d at 104. Even in circumstances in which the validity of the contract is in dispute, the statute mandates courts to reserve these issues for the arbitrator. 9 U.S.C. § 2; *Sandvik,* 220 F.3d at 104. The FAA provides that, when the court is "satisfied that the making of the [arbitration clause] ... is not in issue," it "*shall* ... stay the trial of the action" pending arbitration. 9 U.S.C. §§ 2–4 (emphasis added); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Phrasing this requirement in the negative, the court may decline to enforce an arbitration clause only when the making of the clause itself, not merely the making of the contract as a whole, is disputed.[4] *See id.*

■ Thus, for purposes of determining the enforceability of an arbitration clause, the FAA requires the court conceptually to sever the arbitration provisions from the remainder of the contract. *See Sandvik,* 220 F.3d at 106. Under this principle, deemed the doctrine of severability, courts analyze arbitration clauses as individual agreements, executed concurrently with, but not as part of, the encompassing contract. *See id.* Application of this doctrine means, somewhat anomalously, that a *prima facie* finding that a contract is voidable does not render an embedded arbitration clause voidable or unenforceable. *Id.* Rather, as stated in the FAA, only when the making of the clause itself is in issue is the arbitration provision rendered ineffective. 9 U.S.C. §§ 2–4; *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801. Thus, to avoid arbitration under the FAA, the challenging party must establish grounds for declaring a contract voidable that relate specifically to the arbitration clause, viewed independently from the remainder of the contract. *Sandvik,* 220 F.3d at 106.

■ Although the severability doctrine requires enforcement of an arbitration agreement embedded in an otherwise voidable contract, it does not permit enforcement when the encompassing contract is considered void *ab initio. Id.; see also China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.,* 334 F.3d 274, 282 (3d Cir.2003). The reason for this disjunction lies in the distinction between voidable and void contracts. A voidable contract is one in which a party has the power, "by a manifestation of election to do so," either to disaffirm the agreement, avoiding the legal duties imposed by it, or to ratify the agreement, mandating performance of the

---

3. Plaintiffs do not suggest that the mortgage agreement, including the arbitration clause, was not actually executed by the parties or that the terms of the clause do not encompass the matter at issue in this case.

4. As several courts have noted, the "FAA not only reversed judicial hostility to the enforcement of arbitration contracts, but ... created a rule of contract construction favoring arbitration." *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319 (9th Cir.1996).

contractual obligations by both parties.[5] RESTATEMENT (SECOND) OF CONTRACTS § 7 (1981), *cited in Sandvik,* 220 F.3d at 107. A claim that a contract is voidable does not challenge the existence or *prima facie* validity of the underlying agreement, but charges that inequitable conduct associated with the formation or performance of the agreement renders it unenforceable at the election of the aggrieved party. *See id.; Sandvik,* 220 F.3d at 107–09. Such a claim does not implicate the making of the arbitration clause itself, and, thus, the FAA requires the court to enforce an embedded arbitration agreement in these circumstances. *See id.*

 In contrast, a declaration that a contract is void nullifies all aspects of the agreement, including an embedded arbitration clause, giving neither party the power to ratify or disaffirm its provisions.[6] RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. a ("[A void contract] is not a contract at all."); *Sandvik,* 220 F.3d at 107–09. Essential to this concept is the principle that a void contract lacks legal existence from inception, and that the subsequent judicial declaration merely clarifies, rather than alters, the legal relationship of the parties. *See id.* Because arguments that a contract is void *ab initio* threaten the existence of all provisions of the agreement, including an embedded arbitration clause, such a claim necessarily puts the making of the arbitration clause in issue, rendering resolution of the claim improper for arbitration under the FAA. *Id.; see* 9 U.S.C. §§ 2–4.

 Thus, the FAA mandates enforcement of arbitration provisions in all but two circumstances: (1) when a party alleges that the contract as a whole is void *ab initio* for any reason, or (2) when a party alleges that the arbitration clause itself is voidable for reasons related specifically to the arbitration clause. In all other situations, the FAA requires the court to enforce the terms of the clause and to refer the matter to arbitration.

### B. *Truth in Lending Act*

TILA, as part of its effort to protect consumers from potentially unfair transactions with lenders and creditors, grants individuals an unfettered right to rescind consumer credit contracts within prescribed time limits after consummation of the transactions. 15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.23(a)-(d). The limitations period for the exercise of the right to rescission depends on the nature and extent of the creditor's disclosures. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). Assuming that the creditor makes all material disclosures required under TILA, the consumer has three days after consummation of the transaction in which to rescind. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). However, if the creditor fails to make any of the necessary disclosures, the consumer has up to three years in which to rescind the transaction and demand a return of any moneys paid to the creditor. 15 U.S.C. § 1635(b), (f); 12 C.F.R. § 226.23(a)(3), (d). Following the applicable limitations period, whether three days or three years, the consumer loses the right to rescind and must comply with the terms of the agreement. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(c).

---

**5.** Voidable contracts often arise in circumstances in which the contract is tainted by unconscionability, duress, misrepresentation, fraud, or other bad faith conduct. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 7 (1981).

**6.** Void contracts generally arise in cases of forgery of a party's name or unauthorized execution of an agreement on behalf of another party. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. a.

■ This summarization demonstrates that TILA's rescission provisions render a contract voidable, not void. *See Large v. Conseco Fin. Servicing Corp.,* 292 F.3d 49, 55 (1st Cir.2002). As discussed previously, the traditional distinguishing factor between voidable and void contracts is that the former vests a party with the power to elect either to ratify or to disaffirm the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 7. Similarly, TILA establishes a procedure under which a consumer may elect to disaffirm the contract, by submitting a timely notice of recission, or to ratify the agreement, by failing to submit the notice within the prescribed limitations period. 15 U.S.C. § 1635(b), (f); 12 C.F.R. § 226.23(a)(3), (c)-(d). Unlike a void contract, which is unenforceable by either party and which may never be "ratified," a contract subject to rescission under TILA is merely voidable at the election of one party, the consumer. *See id.* § 226.23(d)(1) (stating that, after notice of rescission is provided, agreement "*becomes void*") (emphasis added). Under no circumstances does the other party, the creditor, enjoy a similar right to avoid the contractual obligations, as it presumably would if the contract was void *ab initio* and unenforceable from inception.

In arguing that the notice of rescission itself renders the agreement immediately void, plaintiffs misapprehend the nature of TILA and its rescission provisions. By permitting individuals to avoid enforcement of consumer credit contracts for any reason, TILA effectively deems all agreements subject to its provisions *per se* voidable. *See* 15 U.S.C. § 1635(a) (providing unfettered right of rescission). The notice itself is merely procedural, serving as a non-judicial method by which a party indicates his or her intent to disaffirm the contract. Until the creditor honors the notice, or a court certifies its validity, it is without legal effect, and serves only to preserve the consumer's ability to pursue the remedies provided under the statute. *See id.* § 1635(g) (stating that the *court,* "in addition to rescission ... may award relief ... for violations of this subchapter"); *Yamamoto v. Bank of N.Y.,* 329 F.3d 1167, 1169–71 (9th Cir.2003); *Large,* 292 F.3d at 55. Contracts subject to rescission under TILA are merely voidable, not void,[7] and cannot satisfy the first exception to the FAA's presumptive rule in favor of arbitration.

■ Notwithstanding this conclusion, plaintiffs may still evade enforcement of the arbitration provision if they can establish that the contract is voidable on grounds related specifically to the arbitration agreement. 9 U.S.C. §§ 2–4; *Sandvik,* 220 F.3d at 106–08. To meet this standard, plaintiffs must demonstrate that Congress, in declaring consumer credit transactions voidable under TILA, intended to protect consumers from the effect of arbitration provisions.

■ However, a review of the statute and its legislative history discloses that concerns over arbitration played no role in TILA's enactment. The purpose of TILA, as expressed in the statute itself, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The notification requirements of TILA illustrate this purpose, providing for disclosure of the identi-

---

7. This conclusion is supported by the definition of the term rescission: "to discharge all remaining duties of performance and terminate the contract." BLACK'S LAW DICTIONARY 1308 (7th ed.1999). This definition clearly does not suggest that rescission declares the agreement void from inception.

ty of the credit company, financing fees and interest rates, and the extent and amount of periodic finance payments. *Id.* § 1638(a). Notably, these provisions do not require disclosure of rights of arbitration or allow specifically for rescission of arbitration agreements; in fact, the term "arbitration" appears neither in the statutory or regulatory provisions nor in the legislative history. Concerns over unfair finance charges, rather than overreaching arbitration agreements, drove Congress to enact TILA, *see* S.REP. No. 96–368, at 28–29 (1979), *reprinted in* 1980 U.S.C.C.A.N. 236, 264–65, and, accordingly, contracts subject to rescission under TILA cannot be deemed voidable for reasons related to arbitration clauses embedded in those contracts.[8]

A notice of rescission under TILA is not effective to preclude enforcement of an arbitration agreement embedded in a consumer credit contract.[9] Because plaintiffs in this case do not dispute that the arbitration provision facially encompasses the issues raised in their complaint, the FAA requires enforcement of the arbitration clause.

An appropriate order will issue.

---

**8.** The court notes that, in this case, plaintiffs exercised their right to rescission because of allegedly excessive finance charges, not for reasons related to the arbitration clause itself.

**9.** Although this precise issue apparently presents a matter of first impression in the Third Circuit, this holding accords with the decisions of the First Circuit Court of Appeals in *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49 (1st Cir.2002), and the District Court for the Northern District of Illinois in *Dorsey v. H.C.P. Sales, Inc.*, 46 F.Supp.2d 804 (N.D.Ill.1999). *Cf. Choice v. Option One Mortgage Corp.*, No. Civ. A. 02–6626, 2003 WL 22097455, at *13 (E.D.Pa. May 13, 2003)

(finding arbitration clause in contract subject to TILA enforceable over challenge that contract was unconscionable). The other court to address this issue, the District Court for the Middle District of Florida in *Wilson v. Par Builders II, Inc.*, 879 F.Supp. 1187 (M.D.Fla. 1995), held, without substantial discussion, that the effect of a notice of rescission was a question for the court, not the arbitrator, and refused to order arbitration. *Id.* at 1190. The court finds more convincing the well-reasoned conclusion of the First Circuit in *Large*, which, notably, relied on Third Circuit precedent in its decision. *See Large*, 292 F.3d at 53–54 (quoting *Sandvik*, 220 F.3d 99).