Voto particular disidente emitido por
el Juez Asociado Se-ñor Rivera García,
al cual se unen la Jueza Asociada Señora Pabón Charneco, el Juez Asociado Señor Feli-berti Cintrón y el Juez Asociado Señor Estrella Martínez.
El curso decisorio de la mayoría del Tribunal de parali-zar las vistas de injunction preliminar y permanente, y emitir una orden de mostrar causa, con clara inclinación a revocar, me obliga a disentir muy respetuosamente. Cree-mos que en el caso de autos, Motorambar no sufriría daño alguno de no expedirse la solicitud de auxilio de jurisdicción. Asimismo, consideramos improcedente la ex-pedición de una orden de mostrar causa ya que ninguna de las partes contratantes, Quality y Motorambar, llegaron a un acuerdo de voluntades necesario para consentir a la cláusula de arbitraje redactada en este acuerdo.
I
El 24 de octubre de 2011 Motorambar, Inc. (Motoram-bar) presentó ante este Tribunal un recurso de certiorari acompañado de una moción en solicitud de auxilio de jurisdicción. Nos solicitó que ordenáramos la paralización de las vistas pautadas para el 24 y 31 de octubre del 2011 y el 2 de noviembre de 2011 en el Tribunal de Primera Instancia, relacionadas con la demanda de injunction pre-liminar y permanente, presentada en su contra por L.M. Quality Motors, Inc. (Quality). Así también, solicitó la re-vocación de la resolución emitida por el Tribunal de Apela- *261 dones de 21 de octubre de 2011. En ese dictamen, el foro apelativo determinó invalidar una cláusula sobre arbitraje para la solución de disputas establecida en el contrato ce-lebrado entre las partes.
Según los hechos de este caso, Quality, quien es conce-sionaria de los vehículos Nissan en el municipio de Manatí y otras áreas limítrofes, presentó ante el tribunal de pri-mera instancia una solicitud de entredicho provisional, in-juction preliminar y de injuction permanente contra Motorambar. Esta última es la distribuidora general de los vehículos Nissan en todo Puerto Rico. Esa corporación, a su vez, distribuye y vende esos vehículos a sus concesiona-rios en la Isla, entre los cuales se encuentra Quality. En esencia, Quality alegó que el 16 de agosto de 2011 Moto-rambar, sin justa causa, había dejado sin efecto el contrato de distribución en violación de la Ley Núm. 75. Al amparo del Art. 3-A de la Ley Núm. 75 (10 L.P.R.A. sec. 278b-1), Quality solicita que se ordene a Motorambar desistir de llevar a cabo cualquier acción en menoscabo de la relación contractual existente entre ellos.(1) El Tribunal de Primera Instancia declaró “no ha lugar” el entredicho preliminar; no obstante pautó una vista en una fecha posterior para dilucidar la procedencia del injuction preliminar y el injuction permanente.
Posteriormente, Motorambar instó una moción de desestimación. Adujo que el 20 de febrero de 2007 el Sr. Luis Morales (en representación de Quality) y el señor José Ordeix Llabaly (en representación de Motorambar) suscri-bieron un contrato titulado Contrato de Concesionarios de Ventas No Exclusivo. Añadió que en ese contrato, específi-camente en su Cláusula 36-1, se estableció que las dispu- *262 tas surgidas entre las partes serían resueltas mediante un procedimiento de arbitraje, por lo cual el tribunal de pri-mera instancia carecía de jurisdicción. El foro primario, mediante una resolución de 16 de septiembre del 2011, de-claró sin lugar esta moción de desestimación. Razonó tam-bién, que existía una controversia en relación con la vigen-cia del contrato y la validez de la cláusula de arbitraje pactada. En consecuencia, para dilucidar tales controver-sias citó a las partes a una vista evidenciaría por cele-brarse posteriormente.
Luego de celebrada la vista evidenciaría, en la cual se desfiló prueba testifical y documental, el 28 de septiembre de 2011 el tribunal de primera instancia emitió una reso-lución en la que declaró no ha lugar la moción de desesti-mación presentada por de Motorambar. El foro primario concedió credibilidad a los testimonios del señor Rocafort, quien funge como Gerente General de Motorambar y tra-baja directamente con los contratos de la corporación y sus concesionarios, así como al señor Ordeix, representante de Motorambar. Estos testificaron desconocer las particulari-dades, así como las consecuencias de la cláusula de arbitraje. Asimismo, admitieron que tampoco orientaron al señor Morales en relación con dicha cláusula. A base de la prueba vertida en la vista, el foro primario determinó que ambas partes, al suscribir el contrato, no tenían conoci-miento alguno del contenido y alcance de la cláusula. Es decir, no conocían su significado ni las consecuencias reales. Por consiguiente, el pacto de esta no respondía a la voluntad de ninguno de los contratantes, ya que ambas partes, tanto Quality como Motorambar, ignoraban total-mente lo que acarreaba la referida cláusula. Ante tal des-conocimiento, se determinó que esa cláusula no era parte del contrato. Por ello, puntualizó que la Cláusula 36-1, al carecer del elemento de consentimiento de las partes, era inválida.
*263 Con relación al argumento de Motorambar referente a la inconstitucionalidad del Art. 3C de la Ley Núm. 75 (10 L.P.R.A. sec. 278b-3), el foro primario resolvió que, según la doctrina de autolimitación judicial, no era necesario en-trar a dilucidar dicho planteamiento. Particularmente, al margen del Art. 3C de la Ley Núm. 75, el tribunal dispuso que no existió voluntad alguna de las partes para pactar esa cláusula de arbitraje, debido a la falta de información necesaria para un consentimiento válido.
Inconforme con ese dictamen, el 14 de octubre de 2011, Motorambar presentó un recurso de certiorari ante el Tribunal de Apelaciones. En esencia, reiteró sus argumentos presentados ante el foro primario. Argüyó que la cláusula de arbitraje era válida, empero, de considerarse lo contra-rio, procedía entonces que se declarara inconstitucional el Art. 3C de la Ley Núm. 75, supra.
El 21 de octubre de 2011 el Tribunal de Apelaciones emi-tió una resolución en la que denegó la expedición del auto de certiorari, así como la moción en auxilio de jurisdicción. En la evaluación de esta controversia, el foro apelativo in-termedio examinó la transcripción de la prueba oral y de-terminó que la apreciación de la prueba realizada por el foro primario estaba apoyada en la prueba vertida, ya que surgía de los testimonios de los señores Rocafort, Ordiex y Morales, que estos desconocían lo que conlleva una cláu-sula de arbitraje. Por lo tanto, no encontró que el foro pri-mario actuara mediante pasión, prejuicio, parcialidad o error manifiesto en su decisión.
En relación con la constitucionalidad de la ley, el Tribunal de Apelaciones determinó de acuerdo con nuestros pro-nunciamientos jurisprudenciales relacionados a la doctrina de autolimitación judicial, que en su función judicial de-bían abstenerse de dirimir la constitucionalidad del Art. 3C de la Ley Núm. 75, ya que no era necesario debido a que hay otro fundamento que puede disponer del caso. El Art. *264 3C de la Ley Núm. 75 no está en controversia, por lo cual no es necesario dilucidar su inconstitucionalidad. La cláu-sula de arbitraje que es objeto de la controversia se declaró inválida porque ambas partes estaban ausentes de la infor-mación necesaria para emitir un consentimiento válido. Por último, el foro apelativo estableció que el recurso pre-sentado no cumple con lo dispuesto por la Regla 40 del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.
Insatisfecho, el 24 de octubre de 2011 Motorambar pre-sentó ante nos un recurso de certiorari junto con una mo-ción en auxilio de jurisdicción.(2) En su recurso reprodujo los mismos errores planteados ante el foro apelativo intermedio.
II
A. El auxilio de jurisdicción
El inciso (a) de la Regla 28 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A, dispone: “El Tribunal podrá expedir una orden provisional en auxilio de jurisdicción cuando fuere necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración. A los fines de esta regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente, con el propósito de evitar alguna consecuencia adversa que afecte su jurisdicción o que pueda causar daño sustancial a una parte mientras resuelve el recurso.” Mientras el inciso (c) de esta regla señala como sigue: “Cuando una parte solicite una orden en auxilio de jurisdicción con la intención de paralizar la celebración de una vista, la misma deberá ser presentada *265 no más tarde de cinco (5) días antes de la fecha pautada para la vista cuya celebración se pretende paralizar, ex-cepto que se demuestre causa justificada.” (Enfasis nuestro.) Id.
La decisión de paralizar el efecto de una decisión me-diante una solicitud de auxilio de jurisdicción que decrete o deniegue la paralización de los procedimientos, recae en la sana discreción del tribunal que debe guiarse por los crite-rios siguientes: (a) que el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos de la apelación; (b) que demuestre que a menos que se detenga la ejecución sufrirá un daño irreparable; (c) que ningún daño sustancial se causara a las demás partes interesadas, y (d) que la suspensión de la sentencia no peijudica el in-terés público. Peña v. Federación de Esgrima de P.R., 108 D.P.R. 147, 154-155 (1978).
Motorambar presentó el petitorio en auxilio de jurisdic-ción con intención de paralizar la celebración de la vista sobre injunction preliminar y permanente, pautada para el mismo día en que se presentó la moción, es decir el 24 de octubre de 2011, la cual continuaría el 31 de ese mes y el 2 de noviembre próximo. El inciso (c) de la Regla 28 de este Tribunal, 4 L.P.R.A. Ap. XXI-A, establece que el peticiona-rio de la moción en auxilio de jurisdicción deberá presen-tarla al menos 5 días antes de la celebración de la vista. Motorambar incumplió sin justificación con esta Regla.
Una moción en auxilio de jurisdicción se expedirá en situaciones de urgencia donde existe el peligro de un daño sustancial, según lo establece el inciso (a) de la Regla 28 de este Tribunal, supra. El caso de autos no cumple con los elementos para que expidamos el auxilio. La moción en auxilio de jurisdicción en el presente caso deja de cumplir con los criterios y requisitos que hemos reiterado. Colegi-mos que el recurso carece de méritos ya que no existe ni la más remota posibilidad de causar “daños irreparables”. En la solicitud de auxilio de jurisdicción no se establece el *266 daño que recibiría Motorambar con la dilucidación del injunction ante el tribunal de instancia. Advertimos, que en caso de prevalecer la postura de Motorambar, el contrato entre las partes provee para que este recupere de Quality todos los gastos y honorarios de abogados incurridos con relación a la determinación final y la transferencia o cam-bio de jurisdicción al foro arbitral. Véase Cláusula 36.3 del contrato, Apéndice, pág. 260. Por consiguiente, no existe correlación entre el daño alegado y las vistas de injunction por celebrarse en el tribunal.
Sin embargo, el paralizar los procedimientos interdícta-les ante el tribunal de primera instancia sí afectaría irre-mediablemente al distribuidor exclusivo, Quality, en claro detrimento de la política pública pautada a través de la Ley Núm. 75. Asimismo, opinamos que aún de concluirse que erraron los foros inferiores al no validar la cláusula de arbitraje, ello no impide que el foro primario emita el re-medio interdictal solicitado por Quality. Nótese que la Ley Núm. 75 permite la concesión del remedio provisional “[e]n cualquier pleito en que éste envuelva directa o indirecta-mente la terminación de un contrato de distribución o cual-quier acto en menoscabo de la relación establecida entre el principal o concedente”. Art. 3-A de la Ley Núm. 75, supra.
B. La improcedencia del recurso de “certiorari”
De acuerdo con la jurisprudencia federal, hemos expre-sado que los tribunales tenemos la tarea de dirimir si un acuerdo establece un deber de las partes de arbitrar una controversia. World Films, Inc. v. Paramount Pict. Corp., 125 D.P.R. 352, 361 (1990), citando a At & t Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986). Igualmente, en Rivera v. Clark Melvin Securities Corp., 59 F. Supp.2d 297, 305 (1999), el tribunal dispuso que corresponde a los tribunales decidir si existe o no un acuerdo válido para arbitrar.
*267 Por otro lado, es harto conocido que de ordinario los con-tratos se perfeccionan mediante la concurrencia de los ele-mentos de la causa, el objeto y el consentimiento, 31 L.P.R.A. sec. 3391. En relación con el consentimiento, el Prof. José Vélez Torres, comentó que “[l]a prestación del consentimiento para que sea considerada válida, presume una voluntad capaz que sea, además, libre y que tenga completo conocimiento sobre lo que está haciendo; es decir, una voluntad que actúa libre y espontáneamente”. (Enfasis nuestro.) J.R. Vélez Torres, Curso de derecho civil: derecho de contratos, San Juan, Facultad de Derecho de la Univer-sidad Interamericana, 1990, T. V, Vol. II, pág. 45. Asi-mismo, citando con aprobación a Federico De Castro y Bravo y a Puig Brutau, dispusimos que “para que se en-tienda prestado el consentimiento a un negocio jurídico, ya expresa o implícitamente, es necesario que el declarante tenga conocimiento adecuado del alcance de su declaración”. (Enfasis en el original y nuestro.) Colón Gutiérrez v. Registrador, 114 D.P.R. 850, 863 (1983), ci-tando a Federico De Castro y Bravo, El Negocio Jurídico, Madrid, Gráficas Marisal, 1971, pág. 58; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. I, pág. 77. En este caso, las partes desconocían el alcance de sus declaraciones en torno a la Cláusula 36-1 de arbitraje establecida en el contrato que suscribieron. Los testimonios desfilados en la vista, a los cuales el foro primario confirió credibilidad, así lo demostraron. Por ende, las partes consintieron el contrato, salvo por la Cláusula 36-1, porque no estaban informados adecuadamente de lo que implicaba aceptarla.
Es también doctrina reiterada por este Tribunal que, salvo se demuestre que medió pasión, prejuicio, parciali-dad o error manifiesto del foro primario, los tribunales ape-lativos no debemos intervenir con la apreciación de la prueba del Tribunal de Primera Instancia. Rodríguez v. Urban Brands, 167 D.P.R. 509, 522 (2006). Esto es así, ya *268 que los juzgadores del foro primario se encuentran en me-jor posición de aquilatar la prueba testifical y adjudicar credibilidad, ya que escuchan a los testigos y observan su comportamiento mientras declaran. Argüello v. Argüello, 155 D.P.R. 62, 79 (2001). Como indicáramos anterior-mente, el foro primario, a base de la prueba presentada y los testimonios de los señores Rocafort, Ordiex y Morales, determinó que ambas partes no tenían la voluntad para consentir la cláusula de arbitraje. Conforme a la decisión emitida por el foro apelativo intermedio, consideramos que la determinación del foro de instancia está libre de pasión, prejuicio, parcialidad o error manifiesto. En atención a ello, debemos otorgar en este caso deferencia al juez sen-tenciador en su apreciación de la prueba.
Por otra parte, es doctrina reiterada la regla de autoli-mitación judicial. Esta exige a los tribunales abstenerse de resolver una controversia por medio de un fundamento constitucional si le es posible solucionarla mediante algún otro fundamento de índole no constitucional. En armonía con lo anterior, el foro primario luego de aquilatar la prueba desfilada durante la vista, no consideró necesario pasar juicio sobre la constitucionalidad del Art. 3C de la Ley Núm. 75. La prudencia judicial de ese foro se basó en la prueba presentada durante la vista de la cual surgía diáfanamente que las partes no tenían voluntad de esta-blecer una cláusula de arbitraje en el contrato. Quedó pro-bado que tanto Quality como Motorambar desconocían el significado y las consecuencias de la cláusula. Es evidente que ninguna de las partes explicó la cláusula de arbitraje durante la contratación.
Asimismo, si consideramos la presunción establecida en el Art. 3C de la Ley Núm. 75 llegaríamos al mismo resultado. Nótese que la ley federal de arbitraje no ocupa el campo cuando las partes han establecido que la ley de un estado regirá el acuerdo de arbitraje. World Films, Inc. v. Paramount Pict. Corp., supra, pág. 358, citando a Volt *269 Information Sciences, Inc. v. Board of Trustee of Leland Stannford Junior Univ., 485 U.S. 976 (1988). El contrato en su Cláusula 36-2, estableció que las decisiones del árbi-tro serán conforme al contrato o las leyes de Puerto Rico, en las áreas en que pueda existir algún vacío en el contrato. Evidentemente, las partes deseaban que en caso de surgir algún conflicto en torno al contrato fuera resuelto conforme a lo dispuesto en nuestro ordenamiento jurídico.
La Ley Núm. 448 de 28 de diciembre de 2000 (10 L.P.R.A sec. 278b-3), que enmendó la Ley Núm. 75, para incorporarle a esta última el Art. 3C, reitera la política de proteger a los distribuidores en su relación comercial con los principales. Establece lo siguiente:
Antes de que pueda invocarse o ponerse en vigor cualquier convenio de cláusula que obligue a las partes a resolver me-diante arbitraje cualquier controversia surgida bajo un con-trato de distribución otorgado al amparo del presente capítulo, será requisito indispensable antes de que dicha controversia pueda ser sometida a arbitraje, a solicitud de cualquiera de las partes, que un tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito en forma libre y voluntaria por ambas partes.
Existirá una presunción controvertible de que cualquier convenio o cláusula de arbitraje contenida en un contrato de distribución fue incluida o suscrita a instancia del principal o concedente, y de que cualquier convenio o cláusula que obligue a las partes resolver mediante arbitraje cualquier controver-sia surgida bajo dicho contrato es un contrato de adhesión, a ser interpretado y puesto en vigor como tal. (Enfasis nuestro.) íd.
Con la aprobación de esta ley, se persigue evitar aque-llas situaciones que han debilitado o disminuido la protec-ción ofrecida por la Ley Núm. 75. Es por ello que el legis-lador expresó, es altamente recomendable asegurar que la decisión de suscribir un acuerdo de arbitraje como parte de un contrato de distribución, que implica una renuncia al derecho a acudir al foro judicial, reciba por lo menos una protección específica de ley, al disponer que antes de poner en vigor cualquier convenio o cláusula de arbitraje sea re- *270 quisito indispensable, a solicitud de cualquiera de las par-tes, que un Tribunal con jurisdicción en Puerto Rico determine que dicha cláusula o convenio de arbitraje fue suscrito en forma libre y voluntaria por ambas partes. Ex-posición de Motivos de Ley Núm. 448-2000.
Por otro lado, el Tribunal Supremo federal, en Prima Paint Corp. v. Flood & Conklin Mfg., Co., 388 U.S. 395 (1967), interpretó las sees. 2, 3 y 4 de la Ley Federal de Arbitraje. Resolvió que las cláusulas de arbitraje son sepa-rables del resto del contrato que se incorporan, y que co-rresponde al tribunal, no a un árbitro, adjudicar un ataque a estas. Distinto es cuando se impugna la totalidad del contrato, en cuyo caso le corresponde a un árbitro dirimir esa controversia cuando se ha pactado el arbitraje para resolver las que se susciten. Large v. Conseco Finance Servicing Corp., 292 F.3d 49 (2002).
La controversia en el caso de autos trata sobre la vali-dez de la cláusula de arbitraje incluida en el contrato entre las partes. El Art. 3C de la Ley Núm. 75 exige que los tribunales adjudiquen si la cláusula de arbitraje se acordó de manera libre y voluntaria. Según la prueba testimonial, Quality y Motorambar, aunque discutieron otras cláusulas del contrato, no lo hicieron con la cláusula de arbitraje por-que desconocían su significado, alcance y no concurrió el acuerdo de voluntades necesario para consentimiento válido. Por lo tanto, la prueba que mereció la credibilidad del foro de primera instancia sostiene que ambas partes aceptaron el contrato, excepto lo dispuesto en la cláusula de arbitraje.
III
Por los fundamentos expuestos, denegaría la expedición del auto de certiorari, así como la solicitud de auxilio de jurisdicción.

 El Art. 3-A de la Ley Núm. 75 (10 L.P.R.A. sec. 278b-1) establece que cual-quier litigio en que esté involucrado el menoscabo a los derechos de un distribuidor, el tribunal podrá conceder cualquier remedio provisional o de naturaleza interdictal durante la pendencia del pleito para que se haga o se deje de hacer o para que se ordene a cualquier parte, o a ambas, continuar la relación tal y como existía esta antes del mencionado menoscabo.

 El recurso de certiorari presentado ante este Tribunal contiene un total de 26 páginas. El 24 de octubre de 2011 Motorambar presentó una moción para que se admitiera su recurso en exceso de las páginas permitidas por la Regla 17(j) del Reglamento de este Tribunal, 4 L.RR.A. Ap. XXI-A. Consideramos innecesario en este caso el exceso de páginas.