**Aster ANDERSON, Plaintiff,**

**v.**

**DELTA FUNDING CORP., et al., Defendants.**

**No. 1:03CV0900.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 24, 2004.

Jeffrey D. Dillman, Cleveland, OH, for Plaintiff.

David W. Thompson, McGlinchey Stafford, Beachwood, OH, Steven D. Baum, Woodbury, NY, Barbara Friedman Yaksic, McGlinchey Stafford, Cleveland, OH, Dominic Vitantonio, Mayfield Village, OH, for Defendants.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff Aster Anderson ("Anderson") of Garfield Heights, Ohio, brings this lawsuit against Defendants Delta Funding Corporation ("Delta") of Woodbury, New York, Countrywide Home Loans, Inc. ("Countrywide") of California and Southeast Financial Services, Inc. ("Southeast") of Ohio, in connection with a mortgage loan she procured from Delta and which Delta later transferred to Countrywide. Defendant Southeast is a mortgage broker, which brokered the transaction in question. Anderson seeks rescission, statutory and actual damages pursuant to the Home Ownership and Equity Protection Act of 1994 ("HOEPA") and the Truth in Lending Act ("TILA"), as well as attorney fees.

Anderson raises unconscionability and breach of fiduciary duty claims as well.

Delta and Countrywide now move to compel arbitration and stay all proceedings on grounds that a valid and binding arbitration agreement governs all disputes relating to the mortgage agreement at issue in this action. Southeast has not joined in that motion. Construing all allegations as true and drawing reasonable inferences in favor of the Plaintiff, the Court finds the defendants' motion well-taken. Thus, the Motion to Compel Arbitration and Stay All Proceedings is **GRANTED**; the Court **ORDERS** Delta and Countrywide to pay all filing, administrative, and hearing fees associated with arbitration. Though Southeast did not join in the Motion to Compel Arbitration, given the extent to which the claims against Southeast are intertwined with the other claims in the action, the Court **STAYS** Anderson's action against Southeast as well, pending the arbitration between Anderson and the other defendants.

## I. STANDARD OF REVIEW

Granting a motion to compel arbitration effects a "summary disposition of the [factual] issue" of the existence of an arbitration agreement. *Bertram v. Beneficial Consumer Discount Co.*, 286 F.Supp.2d 453, 456–57 (M.D.Pa.2003). The Court should therefore consider facts in the light most favorable to the Plaintiff when determining whether a valid and enforceable arbitration agreement exists and exercise its "wide discretion" to look beyond the complaint at pleadings and documents submitted by either party. *See State Auto Fin. Acquisition Corp. v. State Auto. Mut. Ins. Co.*, No. C2–03–751, 2003 WL 22502355, at *2 (S.D.Ohio Oct.15, 2003); *Bertram*, 286 F.Supp.2d at 456–57; *Johnson v. Universal Fin. Group, Inc.*, No. 02 C 1875, 2002 WL 1968388, at *1

(N.D.Ill. Aug.22, 2002). Ultimately, however, the Plaintiff bears the burden of proving by a preponderance of the evidence that he or she has asserted a cause of action that is properly cognizable in a court of law. *State Auto.*, 2003 WL 22502355 at *2.

## II. STATEMENT OF FACTS

On April 10, 2000, Anderson entered into a consumer credit transaction with Delta, whereby Delta acquired a security interest in Anderson's property in exchange for a loan in the amount of $80,750.00. (Compl.¶¶ 21–22). On the same day, and as part of the same transaction, the parties executed an Arbitration Agreement ("The Arbitration Agreement"), which states in pertinent part:

In consideration of Delta Funding Corporation's extension of credit, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by both parties, the parties, intending to be legally bound hereby, knowingly and voluntarily enter into this Arbitration Agreement ("Agreement").... 

*"Claim"* means any claim, dispute, or controversy between you and us (except for any Excluded Claims, as defined below) arising from or relating to the Credit Transaction, including the validity, enforceability or scope of this Agreement, or the Credit Transaction. [T]he term "Claim" is to be given the broadest possible meaning and includes, by way of example and without any limitation, any claim, dispute or controversy that arises under or relates to the Truth in Lending Act, the Home Owners and Equity Protection Act and Regulation Z (including any purported election to rescind the Credit Transaction) ...; fraud or misrepresentation, including claims for failing to disclose material facts.

*Federal Arbitration Act and Appeals.* This Agreement is made pursuant to a transaction involving interstate commerce, and, notwithstanding any choice of law clause which may be contained in any other documents which are part of the Credit Transaction, shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 et seq.

*Survival, Severability, Primacy.* This Agreement shall survive ... any rescission by you or attempt by you to rescind the Credit Transaction pursuant to any applicable federal or state statute or regulation. If any portion of this Agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Agreement or the Credit Transaction.

(Arb.Agrmt.Ex. 1). According to Anderson, Delta failed to furnish to Anderson all required HOEPA and TILA "material disclosures" three days prior to the transaction closing. (Compl.¶¶ 42–43). Anderson contends that this failure extended her right to rescind the transaction to a full three years after closing. *See* 15 U.S.C.A. § 1635(f). On February 19, 2003, just over a month before this three-year extended period expired, Anderson sent Delta and Countrywide a notice of rescission, purporting to rescind the mortgage transaction pursuant to TILA. (Compl. ¶ 31; *see also* Ltr. Pl. to Def.'s Ex. A).

After Defendants failed to reply, return loan payments, or otherwise acknowledge the termination of the security interest, Anderson filed the present action. (Compl.¶ 32). In her complaint, Anderson alleges that Defendants used their superior bargaining power to encourage her to sign a loan document containing obligations with which they knew she could not comply. (Compl.¶ 63). Anderson also alleges that the terms of the loan, as well

as Defendants' failure to provide material disclosures three days before the loan transaction's closing, are unconscionable. (Compl.¶ 64).

Anderson seeks rescission, a declaration that the security interest is void, a release of the security interest, return of loan payments (including fees and finance charges), statutory damages, a declaration that Defendants violated TILA, HOEPA and Regulation Z, an injunction, attorney fees and costs, actual damages to be determined at trial, and any other relief deemed proper. (Compl.¶¶ 73(a)-(k)). Defendants deny Anderson's assertions and contend that she has no right to rescind her now long-standing loan agreement.

In their Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, to Compel Arbitration and Stay Proceedings, Delta and Countrywide argue that Anderson's claims are encompassed in the Arbitration Agreement and therefore subject to arbitration. (Def.'s Mem. Supp. Dismissal or Compel Arb. at 1). Anderson asserts that her notice of rescission automatically voids all aspects of her interactions with the defendants, including the Arbitration Agreement. (Pl.'s Mem. Opp. at 7). She also asserts that the Arbitration Agreement is itself invalid and unenforceable on the basis of unconscionability. (*Id.*). Anderson points to unequal bargaining power, lack of assistance of counsel, lack of understanding, the fact that the Arbitration Agreements is allegedly a "contract of adhesion," lack of mutuality and high arbitration costs in arguing that

the Arbitration Agreement is unenforceable as unconscionable. (*Id.* at 7–11.). Delta and Countrywide assert in their reply brief arguments refuting each of Anderson's objections to arbitration, and state for the record that Defendants offer and agree to pay all filing, administrative and hearing fees associated with arbitration. (Def.'s Reply to Pl.'s Mem.).

## III. DISCUSSION

The issues contained in this motion must be clarified before addressing applicable law. Anderson asserts two bases upon which she feels the Arbitration Agreement should be invalidated, either of which would subsequently submit the underlying causes of action contained in the complaint to the Court for consideration: (1) her purported rescission of the loan transaction under TILA automatically rescinds the Arbitration Agreement as well, and (2) even if her rescission notice does not invalidate the Arbitration Agreement, the unconscionability of that agreement under Ohio law renders it ineffective. Anderson need only prevail on one of these two arguments to avoid arbitration under the Arbitration Agreement.

## A. The Federal Arbitration Act ("FAA")

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1] 9 U.S.C. § 2

---

1. Defendants assert in their motion that the "commerce" requirement is met through diversity of citizenship. (*See* Def.'s Mem. Supp. Dismissal or Compel Arb. at 1). To the contrary, however, diversity of citizenship without reference to commerce through additional facts is insufficient to invoke the FAA. *See Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 384 (2d Cir.1961);

*Smith v. Beneficial Ohio, Inc.*, 284 F.Supp.2d 875, 876 (S.D.Ohio 2003); *United States Fidelity & Guaranty Co. v. Bangor Area Joint School Authority*, 355 F.Supp. 913, 916 (E.D.Pa.1973). As Plaintiff concedes, however, mortgage loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce. The Supreme Court has clarified,

(2003). If the Court determines that an issue brought before it is referable to arbitration under a written arbitration agreement, it shall, on the application of one of the parties, stay the proceedings until arbitration is completed. 9 U.S.C. § 3 (2003). Furthermore, the FAA mandates that, when the court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir.2003); *Bertram*, 286 F.Supp.2d at 456–57.

 Under the FAA, a court must sever the arbitration provisions from the remainder of the contract when determining enforceability of the provisions. *See Bertram*, 286 F.Supp.2d at 456–57. A court may only decline to enforce an arbitration agreement when the making of the arbitration agreement itself, and not the contract as a whole, is disputed. *See id.* "Application of this doctrine [of severability] means ... that a prima facie finding that a contract is voidable does not render an embedded arbitration clause voidable or unenforceable." [2] *Id.* The FAA generally requires that courts enforce arbitration agreements, even when embedded in a

contract that has been challenged as voidable. *See id.* at 457–58. This is true because a claim that a contract merely is *voidable* does not implicate the making or formation of the arbitration clause itself. *See Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53 (1st Cir.2002); *Bertram*, 286 F.Supp.2d at 457–58. Parties to a voidable contract retain the power, "by a manifestation of election to do so," either to ratify or to disaffirm the underlying contract. *Bertram*, 286 F.Supp.2d at 457–58. Only where a party challenges an arbitration agreement *itself* as being voidable for reasons independent of the whole contract may it seek to avoid arbitration. The Court may only consider Anderson's consumer claims, accordingly, in the face of a claim that the mortgage transaction is voidable, if she makes a sufficient showing that the Arbitration Agreement—as distinct from the mortgage transaction—is itself voidable.

 A finding that a contract is *void*, on the other hand, will nullify all aspects of a contract, including an arbitration agreement, because a void contract is deemed never to have existed.[3] *See Bertram*, 286 F.Supp.2d at 457–58. Parties to a void contract cannot ratify or disaffirm its provisions. *See id.* A contract deemed void *ab initio* threatens the existence of all provisions of a contract, including embedded arbitration clauses, because a void contract lacks legal stamina from its incep-

moreover, that the FAA applies to virtually all contracts other than transportation worker employment contracts. *See Smith*, 284 F.Supp.2d at 876 (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). The Court presumes that the "commerce" requirement under the FAA has been satisfied in this action.

2. Contracts are usually found voidable in circumstances involving unconscionability, du-

ress, misrepresentation, fraud, or other bad faith conduct. *See* RESTATEMENT (SECOND) OF CONTRACTS § 7 (1981); *Bertram*, 286 F.Supp.2d at 460.

3. Contracts considered void usually arise in cases of forgery or unauthorized execution on behalf of another party. *See* RESTATEMENT (SECOND) OF CONTRACTS at § 7, cmt. a.; *Bertram*, 286 F.Supp.2d at 460.

tion. *See id.* Thus, the claim that a contract is void puts the making of the arbitration clause at issue and renders the resolution of such a claim improper for arbitration under the FAA. *See Large,* 292 F.3d at 53. For the Court to exercise its authority under the FAA to resolve underlying claims contained in this lawsuit, it must find either that the entire mortgage loan transaction was void *ab initio,* rather than merely voidable, or that the separate Arbitration Agreement is voidable for reasons pertaining specifically thereto. Otherwise, the Court must compel arbitration and stay proceedings.

## B. Purported Rescission of the Agreement

■ Anderson asserts that her letter to Defendants dated February 19, 2003, which contained her notice of rescission of the mortgage loan transaction, automatically voids the entire transaction, including the Arbitration Agreement. (*See* Pl.'s Mem. Opp. at 7; Compl. ¶ 31; Ltr. Pl. to Def.'s Ex. A). While Anderson correctly interprets TILA as providing an obligor the "right to rescind the transaction ...," she misunderstands the scope of that right.[4]

As noted above, even an arbitration agreement *embedded within* a challenged contract is severable from the underlying transaction and remains enforceable, despite alleged flaws in that underlying transaction. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402–407, 87 S.Ct. 1801, 18 L.Ed.2d 1270. *See also Fazio,* 340 F.3d at 393–395

(claims involving "the validity of the contract as a whole" and not *just* the arbitration agreement are for the arbitrator, not the district court). Where, as here, the arbitration agreement is *separately* negotiated and executed, the *Prima Paint* principle clearly would require that the Court sever its consideration of that agreement from any attack on the accompanying mortgage transaction.

Anderson attempts to avoid the clear dictates of *Prima Paint* and the Sixth Circuit's decision applying *Prima Paint* in *Fazio* by arguing that TILA confers upon her a statutory right to declare void, *ab initio,* both her mortgage transaction and all simultaneously executed agreements. Anderson asserts that the statutory overlay of TILA, and its broad consumer protections, changes the analysis under the FAA. The Court disagrees with Anderson's attempt to avoid application of well-established federal arbitration principles for a number of reasons, not the least of which is her misreading of TILA and the rights it conveys.

■ "TILA's rescission provisions render a contract voidable, not void." *Bertram,* 286 F.Supp.2d at 459; *see also Large,* 292 F.3d at 55. The fact that TILA permits individuals to avoid enforcement of consumer transactions, such as the loan in the present case, essentially means that all agreements subject to its provisions are *per se* voidable. *See Bertram,* 286 F.Supp.2d at 459. As such, a notice to rescind under TILA is procedural, and serves only as the method by which a

---

4. TILA provides in part:
 [i]n the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property ..., the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter....
 15 U.S.C.A. § 1635(a) (2003).

party indicates his or her intent to disaffirm the contract. *See id.* "Until the creditor honors the notice, or [the proper decision-maker] certifies its validity, it is without legal effect, and serves only to preserve the consumer's ability to pursue the remedies provided under the statute." *Id.*

 Congress enacted TILA to protect consumers from unfair finance charges, not overreaching arbitration agreements. *See id.* at 459. Nothing in TILA or Regulation Z indicates that a consumer's mere assertion of his or her right of rescission has the automatic effect of voiding the contract or of voiding any accompanying arbitration agreement.[5] *See Large,* 292 F.3d at 54. The language of the statute and regulation provide that the security interest "becomes void" when an obligor exercises his or her right to rescind. *See id.* This assumes that the right to rescind has become perfected, however, and is more than the mere assertion of such a right. Thus, the right to rescind must flow from either the creditor's acknowledgment that such a right is available, or an appropriate decisionmaker's determination that it is available. *See id.* at 54–55. When a lender disputes a borrower's purported right to rescind, the decisionmaker must decide whether conditions for rescission have been met.[6] *See id.* at 55. A demand for rescission is not self-executing. *See Thompson v. Irwin Home Equity Corp.,* 300 F.3d 88, 90 (1st

Cir.2002). Thus, rescission under TILA is not automatic where a lender or creditor disputes the borrower's or obligor's purported claim of rescission. *See Large,* 292 F.3d at 55.

 Where a consumer's claim of rescission is not effective unless, and until, a decisionmaker rules upon it, arbitration clauses or agreements remain enforceable. It becomes the province of the arbitrator, accordingly, to decide whether the predicates for rescission under TILA have been satisfied. *See, e.g., Thompson,* 300 F.3d at 90–91 (assertion of right to rescind under TILA should be referred to arbitrator); *Large,* 292 F.3d at 54–55 (same); *Bertram* *4–5 (same); *Dorsey v. H.C.P. Sales, Inc.,* 46 F.Supp.2d 804 (N.D.Ill.1999)(same). *But see Wilson v. Par Builders II,* 879 F.Supp. 1187, 1190 (M.D.Fla.1995) (finding, without analysis, that effectiveness of a notice of rescission is a question for the Court). Defendants Delta and Countrywide have not acknowledged that Anderson's purported rescission met all of the necessary preconditions to rescission, nor has a decisionmaker ruled that her rescission attempt is valid. Anderson has merely preserved her ability to pursue remedies under TILA and Regulation Z in the event that her attempt to rescind is ultimately *deemed* effective. Therefore, Anderson's notice purporting to rescind the mortgage loan transaction did not legally void either the mortgage transaction

---

**5.** TILA states that "[w]hen an obligor exercises his right to rescind under [§ 1635(a)], he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C.A. § 1635(b) (2003).

Regulation Z states that "[w]hen a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for

any amount, including any finance charge." 12 C.F.R. § 226.23(d)(1).

**6.** Those cases in which courts found that rescission automatically followed the consumer's notice of rescission involved lenders' concessions that they had violated TILA's disclosure rules. Where, as here, there are no such concessions, the existence of a right to rescind is subject to determination by a court or arbitrator.

itself or the separate Arbitration Agreement.

In sum, Anderson has not shown that the entire mortgage loan transaction was void *ab initio*. To the contrary, it is, at best, voidable. Because the Arbitration Agreement is governed by the FAA, moreover, it is to be severed and enforced even in the face of a voidable (rescindable) underlying mortgage loan transaction. Accordingly, consistent with the express terms of the Arbitration Agreement—which provide that the obligation to arbitrate survives any attempt to rescind under TILA—the Court finds that Anderson's invocation of rights under that statute is insufficient to overcome her independent agreement to arbitrate.

## C. State Law Claim of Unconscionability

Anderson argues, in the alternative, that the Arbitration Agreement is itself voidable for reasons unrelated to the validity of the loan transaction. Thus Anderson contends that, even if her notice of rescission under TILA does not void the Arbitration Agreement, the Court should decline to enforce that agreement because it is otherwise unenforceable under Ohio law.

Although the FAA preempts any state law or policy regarding arbitration, state contract law governs the determination of whether the Arbitration Agreement was validly obtained in the first place. *See Fazio*, 340 F.3d at 393. "An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Id.* In ruling on a motion to compel arbitration and stay proceedings pursuant to 9 U.S.C. § 3–4, a federal court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint*, 388 U.S. at 404, 87 S.Ct. 1801. Thus, this Court can only invalidate the Arbitration Agreement if, when examined under Ohio contract law, it believes it to be unconscionable when viewed *separately* from the whole transaction.

"Unconscionability is determined by reference to the relative benefit of the bargain to the parties at the time of its making, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties." *Miller v. Household Realty Corp.*, No. 81968, 2003 WL 21469782, at *7 (Ohio Ct.App. June 26, 2003). The "cardinal rule" is that, "in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir.2000). Therefore, to prevail on her unconscionability claim, Anderson must show both (1) procedural unconscionability—by showing the circumstances surrounding the Arbitration Agreement's execution were such that there was no voluntary meeting of the minds—and (2) substantive unconscionability—by showing that the Arbitration Agreement's terms are unfair and unreasonable. *See id.* The presumption favoring arbitration is weaker in a case where there are strong indications that the arbitration clause is adhesive in nature. *See Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859, 867 (1998). Also, arbitration agreements should be examined more closely in dealings between consumers and sophisticated lending institutions. *See Miller*, 2003 WL 21469782 at *7.

### 1. *Procedural Unconscionability*

To begin her argument that the Arbitration Agreement is procedurally unconscionable, Anderson states that she is an elderly, unsophisticated consumer,

making the relative bargaining power of the parties grossly unequal. Despite the cautionary note provided in *Miller,* "an admittedly unsophisticated" consumer may still be bound to an arbitration agreement's provisions, and unequal bargaining power alone does not render an arbitration agreement unconscionable. *See ABM Farms v. Woods,* 81 Ohio St.3d 498, 692 N.E.2d 574, 578 (1998). If unequal bargaining positions alone were evidence of unconscionability, every single consumer mortgage loan transaction ever executed would be flawed. This proposition is simply untenable.

■ In further support of her unconscionability argument, Anderson alleges that she did not understand the language of the Arbitration Agreement or the rights she was waiving by signing the Arbitration Agreement. (Pl.'s Mem. Opp. at 7). "[T]he law does not require [however] that each aspect of a contract be explained orally to a party prior to signing." *ABM Farms,* 692 N.E.2d at 578. Anderson received notice several days prior to closing that she would be asked to enter into an Arbitration Agreement. At closing, Anderson initialed each page of the Arbitration Agreement and signed her full name on the last page acknowledging receipt of the agreement made and an opportunity to review it. A review of the Arbitration Agreement reveals, moreover, both that its language is not particularly complex and that its terms were not typed in abnormally fine print. It is also true that the Arbitration Agreement was not simply *embedded* in the loan documents; it was instead a separate document separately executed by the parties. All of these circumstances contradict Anderson's claim that, as a procedural matter, the Arbitration Agreement was presented to her in an unconscionable manner, designed to hide

the purpose or effect of any consent thereto. *See ABM Farms,* 692 N.E.2d at 578.

Anderson's additional assertion that she did not have the benefit of an attorney at closing and was thus, unprepared to address the Arbitration Agreement when presented to her ignores several critical facts. Defendants, in fact, provided Anderson with ample opportunity to refrain from signing the Arbitration Agreement until she consulted with an attorney. As mentioned above, four days prior to the closing date, Defendants mailed a notice to Anderson which, among other things, explained the Arbitration Agreement she would be asked to sign at closing. (Def.'s Reply to Pl.'s Mem., Ex. 1). Moreover, the last line of the Arbitration Agreement—presumably the final sentence Anderson read before signing her name to the Arbitration Agreement—states that she had the opportunity, if she had chosen to do so, to discuss and review the terms thereof with an attorney. (Arb.Agrmt.Ex. 1). Surely this sentence would trigger in even the most unsophisticated consumer's mind the existence of a right to consult an attorney before signing the Arbitration Agreement.

While Anderson asserts she could not afford an attorney, she provides no evidence to support that claim. There is no evidence that Anderson sought legal counsel, but was turned away, or that she could not have sought free legal services akin to those she is receiving now at some earlier point in time. Anderson also provides no legal authority to support the proposition that consumer transactions entered into without the benefit of counsel for indigent consumers are somehow *per se* unenforceable. Indeed the public policy implications of such a rule—one that would virtually guarantee that indigent consumers would never have the opportunity to contract for anything—are staggering.

The Court finds that Anderson's lack of sophistication and lack of legal counsel do not render the Arbitration Agreement unenforceable in the circumstances. Anderson clearly could read and write, had entered into consumer loan transactions in the past, was notified in advance of the fact that the Arbitration Agreement would be presented to her at closing, and was clearly notified that the Arbitration Agreement was a separate contractual undertaking. In the face of this knowledge, Anderson executed the Arbitration Agreement, declaring that she read it.[7]

Anderson's final ground for contending that the Arbitration Agreement is procedurally unconscionable is her contention that she could not have obtained a loan from an alternative funding source and that she could not have obtained *this* loan unless she acquiesced to the Arbitration Agreement. Anderson presents no evidence to support these contentions, however, either in the form of an affidavit or otherwise. Speculation that the loan may not have been forthcoming simply does not suffice to invalidate an otherwise enforceable arbitration agreement. *See, e.g., Stout,* 228 F.3d at 716 (applying Ohio law in TILA case involving sale of automobile, court found arbitration agreements enforceable, finding "[p]laintiffs have presented no evidence beyond their speculations that [d]efendants would have refused to sell the vehicles had they refused to sign the arbitration agreements....").

The Court finds that the Arbitration Agreement is not procedurally unconscionable and is, hence, enforceable under Ohio law without further inquiry.[8] For the sake of completeness, however, the Court briefly turns to Anderson's contention that the Arbitration Agreement is substantively unconscionable.

### 2. *Substantive Unconscionability*

 Anderson argues that the Agreement is substantively unconscionable due to lack of mutuality and the costs associated with arbitration. The Agreement contains language that would exclude certain types of claims from the arbitration process. Defendants would be entitled to litigate foreclosures, deficiency judgments, and other collection and title acquiring actions, while Plaintiff would be required to arbitrate her counterclaims. (*See* Arb. Agrmt. Ex. 1). Anderson cites to no Ohio case law in support of her lack of mutuality argument, however. Presumably, that is because Ohio courts simply do not require mutuality in the context of arbitration agreements. *See Fazio,* 340 F.3d at 396–97. Mutuality is not a prerequisite to a valid arbitration agreement where the underlying contract is supported by consideration. *See id.; see also Joseph v. M.B.N.A. Am. Bank, N.A.,* 148 Ohio App.3d 660, 775 N.E.2d 550, 553–54 (2002). Here, Plaintiff received the benefits of the loan and Defendants secured an interest in the house, namely, the mortgage. It can-

7. Interestingly, Anderson does not argue that she never read the Arbitration Agreement nor that she was not aware that she was executing an independent agreement relating to the question of arbitration. Indeed, Anderson submits no affidavit supporting her claimed inability to fully comprehend the import of having executed the Arbitration Agreement.

8. To the extent Anderson relies on her complaints about the loan transaction itself to support her claim of procedural unconscionability, those complaints are irrelevant. Under *Prima Paint* the only circumstances relevant to the Court's inquiry are those relating to the validity of the arbitration agreement. The loan transaction may well have been unconscionable; that is a question for the arbitrator, however.

not be said that the underlying transaction lacked consideration.[9]

Anderson next argues that the cost of arbitration effectively prohibits her from seeking to vindicate her rights, thus rendering the Agreement unconscionable. The language of the Agreement with respect to costs states the following:

> ***Hearing Location and Arbitration Costs.*** At your written request, we will consider in good faith making a temporary advance of all or part of the filing, administrative and/or hearing fees in connection with any Claim you initiate as to which you or we seek arbitration. At the conclusion of the arbitration, the arbitrator will decide who will ultimately be responsible for paying the filing, administrative and/or hearing fees in connection with the arbitration. Unless inconsistent with applicable law, each party shall bear the expense of that party's attorneys', experts' and witness fees, regardless of which party prevails in the arbitration.

(Arb.Agrmt.Ex. 1). Unlike an arbitration agreement containing a "fee-splitting" provision, which may be deemed unconscionable under certain circumstances, the cost provision here states that the "arbitrator will decide who will ultimately be responsible" for paying costs. Such a provision can hardly be considered unconscionable, because it is very likely that, after taking Anderson's limited financial means into consideration, the arbitrator will hold Defendants responsible for paying arbitration costs. If a fee-splitting provision does not *per se* invalidate an arbitration agreement, *see Raasch,* 254 F.Supp.2d at 858, it would be illogical to hold that one in which there is a good chance that the plaintiff will not have to pay *any* costs invalidates an arbitration agreement. Moreover, as Defendants point out, if Plaintiff chooses the National Arbitration Forum, that organization it would likely waive her fees, as it often waives fees for financially disabled parties.

Here, Plaintiff has supplied ample evidence to show that the cost of arbitration may well exceed her means, but she has not proven that she would be required to pay any of these costs. To the contrary, Defendants have agreed and promised to pay all costs associated with arbitration. (Def.'s Reply to Pl.'s Mem.).[10] "[T]he fact that [Defendants] agreed to pay all costs associated with arbitration forecloses the possibility that [Plaintiff] could endure any prohibitive costs in the arbitration process." *Livingston v. Assocs. Fin. Inc.,* 339 F.3d 553, 557 (7th Cir.2003). The only fees Plaintiff is responsible for paying are those associated with her own attorneys and witnesses. These would be the same fees she would incur if her claims were adjudicated in this Court, rather than submitted to arbitration. Furthermore, the Case Western Reserve University Law Clinic is providing free legal services to Anderson. Anderson has simply failed to demonstrate that arbitration costs render the Arbitration Agreement substantively unconscionable. In sum, Anderson has failed to show

---

**9.** Anderson's mutuality argument fails for another reason, as well; even where mutuality is required, what is necessary is that each party be bound by an arbitrator's determination with respect to those claims *actually submitted* to him or her. *See Raasch v. NCR Corp.,* 254 F.Supp.2d 847, 856 (S.D.Ohio 2003). That is clearly the case under the Arbitration Agreement at issue here.

**10.** The fact that Defendants offered to pay arbitration costs is merely coincidental to the Court's ruling that Plaintiff has not proven that the costs associated with arbitration (as stated in the Agreement) render the Arbitration Agreement unconscionable. The terms of the Arbitration Agreement itself, absent Defendants offer, are sufficient for the Court to reach its decision.

either procedural or substantive unconscionability, thereby failing to prove that the Arbitration Agreement is voidable. In the absence of such a finding, arbitration is the proper venue for a resolution of this dispute.

## IV. CONCLUSION

The Court finds that a valid and enforceable Arbitration Agreement exists between Plaintiff Anderson and Defendants Delta and Countrywide. The Arbitration Agreement is subject to the FAA and survives both Plaintiff's notice of rescission and unconscionability claims. While Plaintiff's claims against Southeast are not subject to the Arbitration Agreement,[11] they are inextricably intertwined with her claims against Delta and Countrywide. In the interests of judicial economy and in light of the federal policy favoring arbitration, the Court **STAYS** those claims as well, pending the completion of arbitration.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Compel Arbitration and Stay Proceedings pursuant to 9 U.S.C. §§ 3–4 and **ORDERS** Defendants to pay all filing, administrative, and hearing fees associated with the arbitration forum of Plaintiff's choice. The parties will submit a joint status report to the Court every ninety (90) days informing the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

---

11. Of course, Southeast and Anderson are free to agree to submit the disputes between them to arbitration, given that the arbitration involving the other claims in this action may encompass some of the issues involved in Anderson's claims against Southeast.