OPINION
{¶ 1} The plaintiff-appellant, Blanchard Valley Health Association ("BVHA"), appeals the March 17, 2006 Judgment of the Common Pleas Court of Hancock County, Ohio ordering that the action be stayed pursuant to R.C. 2711.02(B) for purposes of arbitration in accordance with Section 11.1 et seq. of the Joint Operating Agreement of the parties.
 {¶ 2} In 1998, Lima Memorial Hospital ("LMH") was experiencing severe financial difficulties. In an approach to solve these financial difficulties LMH approached BVHA and ProMedica Health System ("PHS") to propose an affiliation by which BVHA and PHS would invest and undertake joint management of LMH's facilities. The parties agreed to affiliate with one another and entered into numerous affiliation documents.
 {¶ 3} The affiliation involved five separate corporations: BVHA, PHS, LMH, Lima Memorial Joint Operating Company ("JOC") and BVPH Ventures, Inc. ("JV"). The relationships between these five corporations are as follows: BVHA and PHS jointly own JV; JV and LMH jointly own the JOC; and the JOC operates the Lima hospital facilities for the involved parties.
 {¶ 4} On February 26, 1999, PHS and BVHA entered a Joint Venture Agreement stating that they "desire to form a joint venture for the purpose of creating an entity (the "Venture" or the "Company" to participate with Lima Memorial Hospital in a new joint operating company (the "JOC") for the purpose of operating Lima Memorial Hospital ("LMH")." JV was incorporated and adopted a Code of Regulations.
 {¶ 5} On March 1, 1999, BVHA, PHS, LMH, and JV signed an Affiliation Agreement. Pursuant to the Affiliation Agreement, the parties "desire[d] to set forth the definitive terms and conditions of such JOC and its relationship to LMH and JV." The Affiliation Agreement cites the Joint Operating Agreement which was also signed on March 1, 1999. The Joint Operating Agreement was the only agreement signed by all five parties: BVHA, PHS, LMH, JV, and JOC. The Joint Operating Agreement is an operating agreement entered into in connection with the formation of the JOC, an Ohio nonprofit corporation formed for the purpose of operating LMH. More specifically, the Joint Operating Agreement "sets forth the relationship of the Parties and provides for the terms of said operation in this contractual relationship." Joint Operating Agreement p. 1.
 {¶ 6} On November 7, 2005, LMH announced its interest in offering to purchase the JV membership rights in JOC from BVHA and PHS in a meeting between representatives of LMH, JV, PHS and BVHA. On November 17, 2005, LMH sent a letter to PHS and BVHA extending its offer in writing to purchase JV's ownership interests in the JOC for $7.5 million plus release of the debt guarantees by BVHA and PHS. On November 30, 2005, PHS wrote to LMH regarding its interest in accepting LMH's offer to purchase its ownership interest in the JOC. The letter further stated that the BVHA representative stated on November 7, 2005 that BVHA would not accept the offer and would not allow JV to accept the offer. However, PHS asked if LMH would honor its offer of making the terms available to each individual JV member upon the dissolution of JV as it had indicated in the November 7, 2005 meeting. On December 12, 2005, LMH responded to PHS's letter indicating that in the event of a dissolution prior to the expiration of the offer period, LMH would offer to enter into a transaction with either PHS or BVHA or both regarding the purchase of the ownership interest in the JOC.
 {¶ 7} On January 5, 2006, BVHA filed its complaint in the Common Pleas Court of Hancock County, Ohio. BVHA brought this action for declaratory judgment, permanent injunction, other ancillary relief and damages to remedy what it alleges was a wrongful attempt by PHS and LMH to squeeze BVHA out of its ownership interest in the JOC and JV. Specifically, BVHA claims that it seeks a declaration that PHS's unilateral dissolution of JV without BVHA's consent would violate the JV corporate governance documents. In addition, BVHA challenges LMH's "offers" to JV, PHS and BVHA claiming that it violates the Affiliation, Joint Operating and Separation Agreements and the JOC's Code of Regulations. On January 13, 2006, PHS, on behalf of itself and JV, served a demand for arbitration and filed a Motion for stay of all claims pending arbitration. On January 25, 2006, LMH also served a demand for arbitration, pursuant to the arbitration provision in the Joint Operating Agreement.
 {¶ 8} On January 30, 2006, BVHA filed a Motion for temporary restraining order, preliminary and permanent injunction, requesting that the trial court enjoin the defendants from taking any further action with respect to the demands for arbitration served by PHS on January 13, 2006 and by LMH on January 25, 2006. BVHA alleged that arbitration is not appropriate in this instance because arbitration is to be used only regarding disputes over the Joint Operating Agreement, which contains that clause, and it cannot be compelled to arbitrate any other matters. In addition, BVHA claims that the complaint relates to violations of four separate written agreements between and among the parties, as well as governance documents for the corporate entities created, and that arbitration does not extend to those agreements. BVHA also asserts that PHS is not a JOC member and is not authorized to compel arbitration in this case. Furthermore, BVHA cites language in the other three written agreements that refers to the ability to litigate issues in the courts of Ohio. Therefore, BVHA argues that the parties are permitted to take action in the courts rather than arbitration.
 {¶ 9} PHS, LMH, the JOC, and JV contend that the arbitration language in the Joint Operating Agreement is broad and encompasses the claims alleged in BVHA's complaint. While acknowledging that there are separate agreements, they characterize the multiple agreements as a single transaction that cannot be effectively severed based on the substance of BVHA's claims.
 {¶ 10} On March 17, 2006, the Common Pleas Court of Hancock County, Ohio filed a Judgment Entry ordering this action stayed pursuant to R.C. 2711.02(B) for purposes of arbitration in accordance with Section 11.1 et seq. of the Joint Operating Agreement of the parties. On March 28, 2006, BVHA filed a Motion for stay pending appeal along with a notice of appeal. On March 29, 2006, PHS filed a Memorandum in opposition of BVHA's motion for stay pending appeal. On April 3, 2006, the JOC filed a Memorandum in opposition to BVHA's motion for stay pending appeal. On April 4, 2005, LMH filed a Memorandum in opposition to BVHA's motion for stay pending appeal. On April 19, 2006, the Common Pleas Court of Hancock County, Ohio filed a Judgment Entry ordering arbitration stayed pursuant to Civil Rule 62(B) pending appellate review by this Court.
 {¶ 11} On March 28, 2006, BVHA filed a notice of appeal raising the following assignments of error:
 Assignment of Error I THE TRIAL COURT ERRED IN ITS MARCH 17, 2006 JUDGMENT ENTRY BYGRANTING PHS' MOTION TO STAY PENDING ARBITRATION WHEN PHS WAS NOTENTITLED TO INVOKE THE ARBITRATION CLAUSE OF THE JOINT OPERATINGAGREEMENT.
 Assignment of Error 2 THE TRIAL COURT ERRED IN ITS MARCH 17, 2006 JUDGMENT ENTRY BYORDERING ARBITRATION OF BVHA'S COMPLAINT WHEN BVHA COULD NOT HAVEDEMANDED ARBITRATION EVEN IF IT WANTED TO ARBITRATE.
 Assignment of Error 3 THE TRIAL COURT ERRED IN ITS MARCH 17, 2006 JUDGMENT ENTRY BYORDERING ARBITRATION OF DISPUTES THAT EXIST SOLELY BETWEEN BVHAAND PHS, UNDER THEIR JOINT VENTURE AGREEMENT, WHEN THE ONLY PARTYTHAT DEMANDED ARBITRATION, LMH, LACKS STANDING TO SEEKARBITRATION OF DISPUTES TO WHICH LMH IS NOT A PARTY.
 Assignment of Error 4 THE TRIAL COURT ERRED IN ITS MARCH 17, 2006 JUDGMENT ENTRY BYFINDING THAT THE ARBITRATION CLAUSE IN THE JOINT OPERATINGAGREEMENT APPLIES TO BVHA'S STAND-ALONE CLAIMS AGAINST PHS UNDERTHE JOINT VENTURE AGREEMENT.
 Assignment of Error 5 THE TRIAL COURT ERRED IN ITS MARCH 17, 2006 JUDGMENT ENTRY BYORDERING ARBITRATION OF CLAIMS ARISING UNDER THE AFFILIATIONAGREEMENT, WHICH EXPRESSLY PROVIDES FOR JUDICIAL DETERMINATION OFDISPUTES, NOT ARBITRATION.
 {¶ 12} Generally, an appellate court reviews a trial court's decision to grant a stay pending arbitration under an abuse of discretion standard. Peters v. Columbus Steel Castings Co.,
Franklin App. No. 05AP-308, 2006-Ohio-382, at ¶ 11, quotingCouncil of Smaller Enterprises v. Gates, McDonald Co. (1998),80 Ohio St.3d 661, 665. Under this standard, the decision of the trial court will not be reversed unless the trial court has abused its discretion. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450
N.E.2d 1140.
 {¶ 13} In this case, the trial court filed its Judgment Entry on March 17, 2006. The trial court thoroughly set forth a statement of the case, the claims argued by each party, the standard of review, and the conclusions of law. The trial court established that the determination of whether an issue is arbitrable depends on the language of the arbitration provision provided in the agreement between the parties. Upon the trial court's analysis of the case and the various agreements between the parties, it stated that:
The language at issue in the Joint Operating Agreement is:"any controversy or claim arising out of, under, or relating tothis Agreement or the breach thereof." Similar arbitrationlanguage has been described as "broad," encompassing even theclaim of fraud in the inducement. (Citations omitted.)
 There can be little argument that the subject arbitrationclause must be characterized as "broad." The only specificexclusion is the Separation Agreement, which does not contain anarbitration clause. Looking at the terms of the variousagreements, the Court cannot avoid the conclusion that they areinextricably intertwined as threads in the fabric of the jointoperation. * * *
"This [Joint Operating] Agreement and the documents referredto herein contain the entire understanding of the parties heretowith respect to the transactions contemplated hereby * * *."Furthermore, the Code of Regulations of the JOC incorporates theAffiliation Agreement, the Joint Operating Agreement, and theSeparation Agreement. The parties' agreements represent avariation on the maxim of construing statutes and contracts:"expressio unius est exclusio alterius," i.e. the expression orspecification of one excludes the others. The parties themselvesincorporated other documents into the Joint Operating Agreementby their reference and excluded only one document, i.e. theSeparation Agreement, when addressing the arbitrability ofdisputes. Thus, a dispute that arises out of or is related to theJoint Operating Agreement would include those that relate to theother agreements leading to the joint operation of LMH. March 17, 2006 Judgment Entry, p. 7-8. The trial court concluded that "[b]ased on the breadth of the arbitration clause, the interconnection between and among the agreements by virtue of the language of the agreements and the joint operation and the common signatories, and the strong policy favoring arbitration, the Court must conclude that the claims of BVHA fall within the ambit of the arbitration clause, except as specifically excluded as being in the Separation Agreement." March 17, 2006 Judgment Entry, p. 10. Therefore, the trial court ordered that the action be stayed pursuant to R.C. 2711.02(B) for purposes of arbitration.
 {¶ 14} In its first assignment of error, BVHA claims that the trial court erred by granting PHS' motion to stay pending arbitration when PHS was not entitled to invoke the arbitration clause of the Joint Operating Agreement.
 {¶ 15} The Joint Operating Agreement states: "In the event of a dispute under this Agreement, the JOC or any JOC Member may serve written notice upon the Parties subject to the dispute demanding arbitration, and identifying specifically the matters to be arbitrated." Joint Operating Agreement, Article XI, Section 11.2. Thus, only the JOC, JV, or LMH may demand arbitration pursuant to the Joint Operating Agreement.
 {¶ 16} Upon review of the record and the trial court's March 17, 2006 Judgment Entry, we agree with the trial court's conclusion that:
PHS is not a proper party to invoke the arbitration clause.The plain language of the arbitration provision designates theJOC or a JOC Member as initiating arbitration by demand. The JOCMembers are LMH and JV. Although PHS is a "party" to the JointOperating Agreement and other agreements, it is excluded as aninitiator but included as a participant in the arbitrationprocess. However, since the initial demand for arbitration, LMHhas joined the demand and made that challenge moot. (Citationsomitted.)
March 17, 2006 Judgment Entry, p. 10. Therefore, BVHA's first assignment of error is overruled.
 {¶ 17} BVHA asserts in its second assignment of error that the trial court erred by ordering arbitration of BVHA's complaint when BVHA could not have demanded arbitration even if it wanted to arbitrate.
 {¶ 18} Ohio courts expressly permit arbitration clauses that are more favorable to one party than to another. Specifically,
[M]erely because an arbitration agreement can be read as beingmore favorable to one party does not invalidate the agreement aslacking mutuality of obligation. Mutuality of obligation incontract law does not mean that each party must have the exactsame obligations. * * * Nowhere in the definition ofconsideration is there a requirement that the benefits ordetriments flowing to each party be exactly the same.
 Robbins v. Country Club Ret. Ctr. IV, Inc. (March 17, 2005), 7th Dist. No. 04BE43, 2005-Ohio-1338, at ¶ 24-28. See alsoJoseph v. M.B.N.A. Am. Bank, N.A., 148 Ohio App.3d 660, 664,Anderson v. Delta Funding Corp. (N.D. Ohio, 2004), 316 F.Supp.2d 554, 566.
 {¶ 19} In this case, the Joint Operating Agreement is clear in stating that "[i]n the event of a dispute under this Agreement, the JOC or any JOC Member may serve written notice upon the Parties subject to the dispute demanding arbitration and identifying specifically the matters to be arbitrated." Joint Operating Agreement, Article XI, Section 11.2. The Joint Operating Agreement was signed by BVHA on March 1, 1999. Therefore, BVHA entered into a contract which implicitly provided that BVHA would not be contractually entitled to demand arbitration; however, the Joint Operating Agreement also establishes that any of the parties subject to the Joint Operating Agreement may be subject to arbitration. Therefore, BVHA's second assignment of error is overruled.
 {¶ 20} BVHA alleges in its third assignment of error that the trial court erred by ordering arbitration of disputes that exist between BVHA and PHS, under the Joint Venture Agreement, because the only party that demanded arbitration, LMH, lacked standing to seek arbitration of the disputes because it was not a party to the claims. BVHA argues that there are two fundamental claims in this case that arise solely under the Joint Venture Agreement between BVHA and PHS. The two claims alleged question whether (1) PHS can unilaterally cause the dissolution of JV and (2) whether BVHA does have the right to buy out PHS' interest in JV.
 {¶ 21} Upon review of the complaint filed by BVHA, it is clear that BVHA included LMH as a defendant and the claims did not specify that certain claims were alleged against certain defendants. Specifically, BVHA does not assert in its complaint claims directly against PHS arising out of the Joint Venture Agreement. In addition, as stated above, LMH does have standing to demand arbitration because LMH is a defendant in the case, LMH is a JOC Member and all of the claims plead in the complaint refer to the express and agreed upon language of the arbitration clause of the Joint Operating Agreement. Specifically, Section 11.1 of the Joint Operating Agreement sets out the scope of the issues encompassed by the parties' agreement to arbitrate: "Except for matters provided for in the Separation Agreement,any controversy or claim arising out of, under, or relating tothis Agreement or the breach thereof which cannot be resolved by the parties, shall be settled by binding arbitration * * *." (Emphasis added.) In addition, Section 11.2 of the Joint Operating Agreement provides that LMH (as a JOC Member) may demand arbitration. Therefore, if a dispute arises and falls within the broad scope of the arbitration clause set forth in Section 11.1, then LMH has standing to seek arbitration pursuant to Section 11.2.
 {¶ 22} Furthermore, as stated above, there is a significant interrelationship of the parties through the numerous agreements which provide that the other agreements are incorporated into the Joint Operating Agreement by the parties reference and excluded only one agreement from the arbitrability of disputes. BVHA's assertion that certain claims "arise out of" the Joint Venture Agreement does not remove the claims from the reach of the arbitration clause in the Joint Operating Agreement because the claims "aris[e] out of, under, or relat[e] to" the Joint Operating Agreement as well.
 {¶ 23} Therefore, upon review of the record and the agreements, the trial court did not err in ordering arbitration because LMH did have standing to seek arbitration of the disputes in this case. Accordingly, the third assignment of error is overruled.
 {¶ 24} We shall address BVHA's fourth and fifth assignments of error together because BVHA asserts that the arbitration clause does not extend to all claims at issue. Specifically, BVHA asserts that the trial court erred by finding that the arbitration clause in the Joint Operating Agreement applies to BVHA's stand-alone claims against PHS and by ordering arbitration of claims arising under the Affiliation Agreement, which expressly provides for judicial determination of disputes.
 {¶ 25} Where the parties have entered into a broad arbitration clause, arbitration is "not limited to claims that literally `arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd. (5th Cir. 1998), 139 F.3d 1061, 1067, citing J.J. Ryan Sons v.Rhone Poulenc Textile (4th Cir. 1988), 863 F.2d 315, 321. Specifically, where the arbitration provision at issue is "broad," it is "not necessary that the dispute arise out of the [agreement containing the provision] to be arbitrable — but only that the dispute `relate to' or be `connected with'" the agreement in some way. Pennzoil, 139 F.3d at 1068.
 {¶ 26} In this case, the arbitration agreement encompasses not only claims that "arise under" the Joint Operating Agreement, but also all claims that "touch," "relate to" or have any "significant relationship to" the Joint Operating Agreement. Upon a review of the complaint, there is a significant relationship with each of the claims to the Joint Operating Agreement. Many of the claims expressly refer to the Joint Operating Agreement. However, claims do not have to expressly refer to the Joint Operating Agreement to have a significant relationship to it, because the "overall transaction" includes the Joint Operating Agreement. As stated above, we agree with the trial court that the agreements are "inextricably intertwined as threads in the fabric of the joint operation." Therefore, all of BVHA's claims are arbitrable under the Joint Operating Agreement.
 {¶ 27} In addition, the forum selection clause does not affect the application of the arbitration clause. The Affiliation Agreement incorporates the Joint Operating Agreement into the Affiliation Agreement in Section 2 by discussing it and attaching the Joint Operating Agreement as an Exhibit. The Affiliation Agreement then goes on to state in Section 15.6:
Any legal action or proceeding with respect to this Agreementmay be brought in the courts in the State of Ohio. (Emphasisadded.)
* * *
Nothing in this Section 15.6 shall affect the rights of theparties to commence any such action in any other forum or toserve process in any such action in any other matter permitted bylaw. (Emphasis added.)
Therefore, neither the Joint Operating Agreement nor the Affiliation Agreement cast any doubt upon the broad scope of the arbitration clause and its application to the claims arising under the Affiliation Agreement.
 {¶ 28} Accordingly, we find that the trial court did not err by finding that the arbitration clause in the Joint Operating Agreement applies to BVHA's stand alone claims against PHS or by ordering arbitration of the claims arising under the Affiliation Agreement. Thus, the fourth and fifth assignments of error are overruled.
 {¶ 29} Therefore, based on the broad language of the arbitration clause, the interconnection between and among the agreements by virtue of the language of the agreements, the joint operation of LMH, the common signatories, and the strong policy favoring arbitration, the trial court was correct in concluding that the claims of BVHA fall within the ambit of the arbitration clause, except as specifically excluded. Accordingly, we agree with the trial court that this action must be stayed pursuant to R.C. 2711.02(B) for purposes of arbitration in accordance with Section 11.1 et seq. of the Joint Operating Agreement.
 {¶ 30} Thus, BVHA's five assignments of error are overruled and the March 17, 2006 Judgment of the Common Pleas Court of Hancock County, Ohio ordering that the action be stayed pursuant to R.C. 2711.02(B) for purposes of arbitration in accordance with Section 11.1 et seq. of the Joint Operating Agreement is affirmed.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.